IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JUNE BRISTER,

           Plaintiff,

vs.                                          **Case No. 07-4108-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

           Defendant.

## MEMORANDUM AND ORDER

Plaintiff has filed an application for social security disability benefits and an application for supplemental security income benefits. Plaintiff alleges an onset date of June 12, 2003. The applications were denied by defendant on the basis of the February 5, 2007 decision of an administrative law judge (ALJ). This case is now before the court to review defendant's decision to deny benefits.

I.  STANDARD OF REVIEW

The court reviews defendant's decision to determine whether the decision was supported by substantial evidence and whether the correct legal standards were applied. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is such evidence that a reasonable mind might accept to support the conclusion. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004)(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The court must examine the record as a whole, including whatever in the record

fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision.  Glenn, 21 F.3d at 984.

    II.  ALJ DECISION (Tr. 16-21)

There is a five-step evaluation process followed in these cases.  First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity (RFC) and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her RFC, age, education and work experience.

In this case, the ALJ decided that plaintiff's applications should be denied on the basis of the fourth step of the evaluation process.  The ALJ decided that plaintiff maintained the RFC to perform her past relevant work as an order clerk.

More specifically, the ALJ determined that plaintiff has not

engaged in substantial gainful activity since the alleged onset date of disability.  The ALJ found that plaintiff suffers from the following "severe" impairments:  obesity; diabetes and lumbar strain.  The ALJ further decided that plaintiff does not have a single impairment or a combination of impairments which meet or equal one of the listed impairments in the social security regulations. Additionally, the ALJ held that plaintiff retains the RFC to perform sedentary work including:  lifting ten pounds frequently and occasionally; sitting six of eight hours; and standing and walking two of eight hours.  The ALJ also found that plaintiff must be allowed to "alternate sitting and standing positions at reasonable intervals" when performing sedentary work. Finally, as previously stated, the ALJ decided that these limitations did not disable plaintiff from performing her past relevant employment as an order clerk.

The ALJ did not find that hand impairments alleged by plaintiff were "severe."  The ALJ also did not make a specific finding that plaintiff's RFC was limited or was not limited by her alleged hand impairments.

III.  PLAINTIFF'S PERSONAL HISTORY

Plaintiff was born in 1953.  She is 5 feet 9 inches tall and weighs approximately 320 pounds.  She is a widow who has had three children.  She lives by herself.  She has a GED, which she completed in 1998.

IV.  PLAINTIFF'S ARGUMENTS

Plaintiff makes five arguments in support of her motion to reverse defendant's decision to deny benefits.  These arguments are:  1) the finding that plaintiff's hand impairments are not "severe" is not supported by substantial evidence; 2) the medical source opinions were not properly considered, particularly the opinions of Dr. Anand Balson and Ms. Janice Shippy, a nurse practitioner; 3) the ALJ failed to properly consider whether plaintiff's impairments met or equaled a disability listing; 4) plaintiff's credibility was not properly considered because the ALJ failed to consider certain objective evidence and plaintiff's activities; and 5) the ALJ's RFC assessment was legally incomplete regarding plaintiff's ability to sit or stand at reasonable intervals.

In her reply brief in this case, plaintiff makes this summarizing statement:

> The main problem the plaintiff has with the ALJ's decision is the finding that plaintiff can stand/walk up to two hours out of eight and that she has no problems using her hands.  Those findings are inconsistent with the opinions of the treating and examining sources.

Doc. 22, p. 3.

V.  MEDICAL SOURCE OPINIONS

The record contains a number of reports from different medical professionals.  The ALJ's opinion does not refer to any reports by the name of the doctor or nurse.  The opinion indicates that the

4

ALJ considered "any" medical statement from an "acceptable medical source" and that:

> [t]he undersigned has also considered claimant's treating source (ex. 16F) who reports that claimant has severe limitations in the use of her upper extremities and requires use of a cane. These reports, however, are not consistent with the minimally abnormal medical signs and findings, particularly as to claimant's alleged upper extremity impairments.

(Tr. 19). Exhibit 16F contains records from Ms. Shippy, a nurse practitioner. These are the only records identified specifically in the ALJ's opinion.

The court has reviewed the administrative record and the various medical reports and will summarize some of the findings below. Dr. Meyers reported on February 23, 2004 that plaintiff had poorly controlled diabetes and hypertension. (Tr. 98). During a follow-up visit on March 26, 2004, plaintiff did not report any concerns. Her diabetes appeared to be in control. (Tr. 95). This was not significantly different from a report of Dr. Meyers on June 12, 2003. (Tr. 101). On April 20, 2004, Dr. Meyers stated in plaintiff's application for a disabled placard that plaintiff was severely and permanently limited in her ability to walk at least 100 feet. (Tr. 110).

Dr. Balson has completed two forms regarding plaintiff. On May 21, 2004 Dr. Balson indicated that plaintiff suffered from: obesity; diabetes; hypertension and neuropathy. (Tr. 117). He stated that she had difficulty walking and standing because of

morbid obesity and neuropathy, but that he had not advised her to limit her activities in any way. (Tr. 121). Dr. Balson also completed an undated form labeled: Medical Source Opinion of Residual Functional Capacity. (Tr. 210-11). On this form he indicated: that plaintiff could sit occasionally and stand or walk infrequently; that she could frequently lift 20 pounds; that occasionally she could use her arms for reaching, pushing and pulling; that she could occasionally use her hands for grasping, handling, fingering or feeling; and that she needs rest because of fatigue, not pain. He attributed plaintiff's limitations to her obesity.

Dr. Chamberlin performed a consulting examination of plaintiff on June 26, 2004. (Tr. 123-26). He found that plaintiff suffered from: obesity; arthralgias; diabetes and edema. He observed:

> The patient walks with a wide based gait limping to both sides. There is pain in multiple regions with preserved range of motion except in the knees, limited by the obesity. . . . She describes pain in the hands and wrists with positive Phalen and negative Tinel. Grip strength and dexterity are preserved. There is no interosseous atrophy noted. The patient reports a history of other joint discomforts, that of the hips, both shoulders, and knees. Again, limited range of motion based mainly on obesity. No assistive device is mandatory today. There is mild-moderate difficulty with orthopedic maneuvers.

(Tr. 125-26).

An x-ray examination was conducted on June 18, 2004. (Tr. 134). The report indicated mild or minimal degenerative changes in plaintiff's low back and left knee. Plaintiff's left hip was

6

considered normal. An MRI of plaintiff's lumbar spine on February 3, 2005 led to the conclusion that there were some mild to moderate degenerative changes "with disc desiccation and mild broad based annular disc bulge at L4-5 which does result in mild inferior neuroforaminal narrowing with the disc bulge abutting the inferior aspect of the left L4 nerve root with the left L4-5 neuroforamen." (Tr. 180).

Dr. Goering reviewed the medical records and made a residual functional capacity assessment on July 21, 2004. (Tr. 171-79). It was his opinion that plaintiff could occasionally lift 20 pounds and frequently lift or carry 10 pounds. He thought plaintiff could sit, stand or walk about 6 hours in an 8-hour day. He found no limitations in plaintiff's ability to push or pull. He noted that plaintiff cooks, does laundry, cleans house, vacuums, cleans the bathroom, shops for groceries (while needing help to carry bags) and leaves home without assistance. He found no manipulative limitations. (Tr. 174). He considered plaintiff to be partially credible in her complaints of: fatigue; left leg swelling; extreme pain in left knee and hands cramping. Regarding plaintiff's assertion of carpal tunnel syndrome, Dr. Goering found that Tinel's sign was negative and Phalen's sign was positive bilaterally.

Ms. Janice Shippy, a nurse practitioner who saw plaintiff on several occasions, completed forms assessing plaintiff's residual functional capacity on May 17, 2005, October 5, 2005, and August 1,

2006.  In May 2005, she listed that plaintiff could:  occasionally stand or walk; frequently lift or carry 10 pounds; infrequently use her arms for reaching, pushing and pulling; and frequently use her hands for grasping, handling, fingering or feeling.  (Tr. 188).  In October 2005 and August 2006, Ms. Shippy downgraded plaintiff's condition to infrequently standing or walking, infrequently using her hands, and frequently lifting or carrying less than 10 pounds.  (Tr. 187 & 227).  "Infrequently" on the form means for an hour or less during an eight-hour work day.  "Occasionally" means two to three hours.  "Frequently" means four to five hours.  Each of these forms makes reference to the February 2005 MRI as providing medical findings in support of the assessment, although there is no finding from the MRI with regard to plaintiff's hands.  It should also be noted, though, that a report by Ms. Shippy documenting an August 1, 2006 checkup, showed a positive Tinel's sign.[1]  (Tr. 279).

VI.  HEARING BEFORE THE ALJ

During the hearing before the ALJ, plaintiff testified that she suffered pain in her hands which was worse in her right hand.  She

---

[1] Defendant has asserted that Ms. Shippy, as a nurse practitioner, is not an "acceptable medical source."  But, SSR 06-3p states that an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source."  Bowman v. Astrue, 511 F.3d 1270, 1275 (10th Cir. 2008) (quoting SSR 06-3p).  We believe Ms. Shippy's opinion is entitled to be weighed in light of SSR 06-03p.  The ALJ's opinion indicates that Ms. Shippy's opinion was given consideration, although the ALJ felt that it was not consistent with medical signs and findings.

stated that she takes pain medication for her hands and for her back. (Tr. 298). She said that she usually stays at home and has no hobbies. (Tr. 300-01). She estimated that she could stand for 10 to 15 minutes, sit in a regular chair for 30 minutes, and walk a half block. (301-02). Plaintiff indicated that she sits or lies down 95% of her waking day. (Tr. 308). She stated that her hands cramp when she uses scissors or scrubs a pan or writes a longer letter. (Tr. 302 & 312).

A vocational expert stated that plaintiff could return to her job as an order clerk unless her ability to finger and handle objects was limited to occasional activity. (Tr. 315).

VII.   ANALYSIS

Plaintiff's first argument is that the ALJ made an error by failing to categorize plaintiff's alleged hand pain and disability as a "severe" impairment. The Tenth Circuit has held that as long as the ALJ finds that a claimant has <u>any</u> severe impairment, then there is no reversible error <u>per se</u> in finding that a particular impairment is not severe. <u>Hill v. Astrue</u>, 2008 WL 3339174 at *2 (10th Cir. 2008)(citing <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1256-57 (10th Cir. 2007)). The ALJ is merely required to perform the remaining steps of the analysis correctly, and these steps may include determining whether the effect of <u>all</u> of the claimant's medically determinable impairments, "severe" and "non-severe," renders plaintiff disabled from all substantial gainful employment.

9

This leads to the question of whether the ALJ did perform the remaining steps of the analysis correctly. Although plaintiff makes an argument regarding the ALJ's step three analysis, the court shall bypass that question and examine the ALJ's step four analysis, particularly with regard to plaintiff's alleged hand impairments. There are three phases to step four of the sequential analysis.

> In the first phase, the ALJ must evaluate the claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007) quoting, Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted).

In this case, the ALJ failed to make an explicit and specific finding as to the measure and extent of plaintiff's hand impairments and their impact upon her residual functional capacity. In discussing the credibility of plaintiff's complaints of disability, the ALJ stated:

> there is little or no evidence of treatment and evaluation or medical signs and findings to support claimant's claims of severe wrist and hand pain, as examinations have shown intact grip strength and dexterity and no other abnormalities other than a positive Phalen's sign.

(Tr. 19). This statement ignores the finding of a positive Tinel's sign. (Tr. 279). It ignores the recorded complaints of hand pain.

(Tr. 278 - during visit to Ms. Shippy; Tr. 123 - during consultative examination by Dr. Chamberlin; and Tr. 176 - examination of record by Dr. Goering who stated that complaints of cramps in hands may be credible). It also ignores the evaluations of Dr. Balson and Ms. Shippy that plaintiff could occasionally or infrequently use her hands for grasping, handling, fingering or feeling.

The ALJ noted that the vocational expert testified that plaintiff could return to her past relevant work as an order clerk. (Tr. 20). But, this opinion was conditioned on plaintiff not having the limitations in the use of her hands that were listed by Ms. Shippy and Dr. Balson.

The ALJ stated, at least with regard to Ms. Shippy's opinion, that the alleged limitations "are not consistent with the minimally abnormal medical signs and findings." Tr. 19. However, to reiterate, this ignores the positive Tinel's sign and the other evidence (for instance, the positive Phalen's sign) supporting the credibility of plaintiff's allegations.

In sum, the ALJ failed to make a specific finding with regard to the extent of plaintiff's hand impairments or explain why a finding of zero or minimal impairment would be consistent with the evidence of a positive Tinel's test and the rest of the medical evidence.[2] In addition, as argued by plaintiff, the ALJ's RFC

---

[2] Defendant's brief refers to the positive Tinel's sign, but states that plaintiff has never had nerve conduction tests to determine if she has carpal tunnel syndrome. On remand, defendant

11

assessment failed to specifically describe the frequency of the need to alternate sitting and standing, contrary to SSR 96-9p at *7.[3] Therefore, the ALJ failed to properly conduct step four of the sequential analysis and failed to discuss significantly probative evidence.

VIII.  CONCLUSION

The court shall reverse the decision of defendant to deny benefits because the ALJ did not properly conduct the RFC assessment in this matter for the above-described reasons.  The court has the discretion to remand for further administrative proceedings or for an immediate award of benefits.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993).  After a review of the record, we are not convinced that a remand for further fact-finding would be an exercise in futility.  Therefore, the court shall reject plaintiff's request for a remand for payment of benefits.  Instead, the court shall order that the denial of benefits be reversed and that the case be remanded to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

---

should consider whether to order such a test pursuant to 20 C.F.R. § 404.1512(f).

[3] SSR-96-9p states at *7: "The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.  It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work."  1996 WL 374185.

12

Dated this 19th day of September, 2008 at Topeka, Kansas.


                              s/Richard D. Rogers
                              United States District Judge